UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BETTY L. CANEDY | ) | NO. EDCV 09-0588-CT |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE,<br>Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

For the reasons set forth below, it is ordered that judgment be entered in favor of defendant Commissioner of Social Security ("the Commissioner") because the Commissioner's decision is supported by substantial evidence and is free from material legal error.

SUMMARY OF PROCEEDINGS

On March 24, 2009, Betty L. Canedy, ("plaintiff"), filed a complaint seeking judicial review of the denial of benefits by the Commissioner pursuant to the Social Security Act ("the Act"). On July 27, 2009, plaintiff filed a brief in support of her complaint. On August 26, 2009, the Commissioner filed a brief in opposition. On September 2, 2009, plaintiff filed a statement of no reply.

SUMMARY OF ADMINISTRATIVE RECORD

1.   Proceedings

On January 18, 2007, (<u>see</u> TR 94),[1] plaintiff filed an application for disability insurance benefits, alleging disability since August 9, 2006, due to ridiculopathy, bulging discs, degenerative joint disease, chronic back pain and foot pain, restless leg syndrome, post-polio syndrome, and anatomical deformity of the foot and leg. (TR 106.)  The application was denied initially and upon reconsideration.   (TR 45-49, 52-56.)

On June 11, 2007, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").   (TR 60.)   On August 19, 2009, plaintiff, represented by an attorney, appeared and testified before an ALJ.   (TR 20-37.)   The ALJ also considered vocational expert ("VE") testimony. (TR 37-41.)

On October 3, 2008, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, and thus was not eligible for benefits.   (TR 5-16.)   On November 17, 2008, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision. (TR 87-89.)   On February 25, 2009, the request was denied.   (TR 1-3.) Accordingly, the ALJ's decision stands as the final decision of the Commissioner.   Plaintiff subsequently sought judicial review in this court.

2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and

---

[1]     "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

order and materially summarizes the evidence in the case.

PLAINTIFF'S CONTENTIONS

Plaintiff essentially contends that the ALJ erred in finding that she has the residual functional capacity ("RFC") to allow her to return to and perform her past relevant work as an office manager.

STANDARD OF REVIEW

Under 42 U.S.C. §405(g), this court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and, (2) the Commissioner used proper legal standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, however, the Court may not substitute its judgment for that of the Commissioner.   Flaten v. Secretary of Health and Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995).   The court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing."   42 U.S.C. §405(g).

DISCUSSION

1.   The Sequential Evaluation

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

1 months."  42 U.S.C. §423(d)(1)(A).

2    The Commissioner has established a five-step sequential evaluation
3 for determining whether a person is disabled.  First, it is determined
4 whether the person is engaged in "substantial gainful activity."  If so,
5 benefits are denied.

6    Second, if the person is not so engaged, it is determined whether
7 the  person  has  a  medically  severe  impairment  or  combination  of
8 impairments.   If  the  person  does  not  have  a  severe  impairment  or
9 combination of impairments, benefits are denied.

10    Third, if the person has a severe impairment, it is determined
11 whether  the  impairment  meets  or  equals  one  of  a  number  of  "listed
12 impairments." If the impairment meets or equals a "listed impairment,"
13 the person is conclusively presumed to be disabled.

14    Fourth,  if  the  impairment  does  not  meet  or  equal  a  "listed
15 impairment," it is determined whether the impairment prevents the person
16 from  performing  past  relevant  work.   If  the  person  can  perform  past
17 relevant work, benefits are denied.

18    Fifth, if the person cannot perform past relevant work, the burden
19 shifts to the Commissioner to show that the person is able to perform
20 other kinds of work.   The person is entitled to benefits only if the
21 person is unable to perform other work.  20 C.F.R. § 416.920; Bowen v.
22 Yuckert, 482 U.S. 137, 140-42 (1987).

23    2.   Issue: RFC Assessment

24    Plaintiff challenges the RFC finding on three broad grounds.   The
25 court will address each in turn.

26    The RFC is the most an individual can still do after considering
27 the  effects  of  any  physical  or  mental  limitations  that  affect  the

28                                    4

1   ability to perform work-related tasks. 20 C.F.R. § 416.945.  In making

2   an RFC determination, the ALJ shall set out a detailed and thorough

3   summary of the facts and conflicting clinical evidence, state any

4   interpretations, and make findings.  Morgan v. Comm'r of Social Sec.

5   Admin., 169 F.3d 595, 600-01 (9th Cir. 1999) (citation omitted). The ALJ

6   "need not discuss all evidence presented to [him]." Vincent v. Heckler,

7   739 F.2d 1393, 1394-95 (9th Cir. 1984).  The ALJ must explain only why

8   "significant probative evidence has been rejected," id. at 1995

9   (emphasis added); the ALJ is not required to address and discount the

10  cumulative evidence, see Magallanes v. Brown, 881 F.2d 747, 755 (9th

11  Cir. 1989).   The court will affirm the ALJ's determination of the

12  plaintiff's RFC if the ALJ applied the proper legal standards and the

13  decision is supported by substantial evidence.  Bayliss v. Barnhart, 427

14  F.3d at 1217.

15      The ALJ applied the proper legal standards here.  The ALJ detailed

16  the medical evidence of record and plaintiff's statements, weighed the

17  evidence, and made specific findings.  Ultimately, the ALJ found an RFC

18  that is predominantly consistent with plaintiff's self-assessment, i.e.,

19  he found that she can:

20  •   lift and carry 10 pounds occasionally and less than 10 pounds

21      frequently;

22  •   stand for up to 2 hours out of an 8-hour work day;

23  •   sit for 6 hours out of an 8-hour work day; and,

24  •   sit for up to 1 hour, then must be allowed to be on her feet for up

25      to 10 minutes before sitting again;

26  •   she must also avoid concentrated exposure to cold.

27  (TR 11.)   Based on this RFC, the VE testified that, while plaintiff

28                                  5

could perform her prior job as an office manager as performed when she quit due to a dispute with her new boss, (see TR 12), she could, nonetheless, perform the job of an office manager as it is generally performed in the national economy.[2]  (TR 39-40.)

### A.  Evidence of record

The gravamen of plaintiff's first challenge the RFC is that the ALJ incorrectly weighed the medical record as a whole, suggesting the entire RFC finding is faulty.  The court disagrees.

First, plaintiff contends the RFC was based upon the opinion of a state agency reviewing physician, (see TR 155-59), which was dated February 27, 2007, and after which date she submitted an additional 100 pages of medical evidence to the ALJ.  She urges that the ALJ, therefore, failed to properly consider those records.

While the ALJ did note that his RFC assessment was "generally compatible," (TR 14), with the assessment opined by the state agency reviewing physician, he did not, however, limit his assessment to the records dated prior to February 2007, or bind himself to the reviewing physician's assessment.  Indeed, in setting out and weighing the evidence of record, the ALJ addressed and evaluated all probative and non-cumulative medical records that relate to 2007 and 2008, including the records of treating physician Robert Peterson, M.D. (See TR 12-15.) The RFC, accordingly, includes limitations that are intended to

---

[2]  This is legally sufficient. See Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001) ("[w]e have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed") (emphasis in original).

encompass the remainder of the medical evidence and plaintiff's self-reports, some of which are not accounted for in the reviewing physician's assessment. The reviewing physician's assessment does not include, for example, a limitation requiring plaintiff to be able to alternate sitting and standing, whereas the ALJ's RFC finding does so, in accordance with plaintiff's subjective statements. (Compare TR 10 with TR 155-59.) There is, therefore, no material legal error here.

Plaintiff complains, too, that the ALJ should have obtained expert review regarding the import of a 2005 bone scan, which was submitted after February 2007, and which indicates that she has "significant osteopenia" in both hips. (See TR 242.)

The ALJ, however, has a duty to develop the record only when the evidence is ambiguous or inadequate to support a determination. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ did not have a duty to re-contact plaintiff's treating physicians where the ALJ found, with support in the record, that the evidence was adequate to make a disability determination). Neither was the case here. The report itself describes "significant osteopenia" as bone degeneration at a level just shy of osteoporosis, (TR 242), which itself is not per se disabling, see 20 C.F.R., Part 404, Subpt. P, App. 1 (2009). To the extent plaintiff's bone degeneration resulted in any functional limitation, the ALJ adequately evaluated those limitations. See Barker v. Secretary of Health & Human Servs., 882 F.2d 1474, 1477-78 (9th Cir. 1989) (for a plaintiff to recover benefits, the evidence must establish that the impairment is accompanied by a *physiological or functional loss* establishing an inability to engage in substantial gainful activity). There is, therefore, no material legal error here.

Plaintiff also argues the ALJ's RFC finding is flawed because the ALJ found that plaintiff *sought* but was *not prescribed* a wheelchair, (TR 13), which she notes is incorrect; after the hearing she submitted for appeals council consideration a March 2007 prescription for a wheelchair, (see TR 90). Although plaintiff indicated in a disability report that she uses a wheelchair, (see TR 123), she did not testify that she does so (see TR 20-37). Moreover, the medical records she submitted do not indicate that she uses the prescribed wheelchair or related to her physicians that she did so. (See TR 88, 147-268.) Indeed, plaintiff has stated that she refuses to use even a cane due to her self-professed "vanity." (TR 88.) Accordingly, the prescription is not probative and the ALJ's inability to evaluate it immaterial. See Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ does not need to discuss every piece of evidence, and must evaluate only evidence that is probative). Therefore, there is no material legal error here.

**B.   Treating physician**

Plaintiff next contends the ALJ failed to properly consider a letter written by one of her treating physicians, Dr. Peterson, in order to help her obtain state disability. In the letter, Dr. Peterson opines that plaintiff is totally disabled and describes her symptoms as: motor weakness, muscle atrophy, fatigue, muscle weakness, joint pain, skeletal deformities, attention, cognitive and concentration capabilities. (TR 265.)

The ALJ declined to give the letter any weight. First, because it was written for purposes of a different agency's evaluation and was tailored, accordingly, to that agency's standards. (TR 14-15.) This is

8

a permissible reason to reject the letter.  Even if the state found plaintiff to be disabled as a result, the ALJ may attribute as much or as little weight to that finding as ALJ deems appropriate.  <u>Wilson v. Heckler</u>, 761 F.2d 1383, 1385 (9th Cir.1985).  Second, the letter is conclusory.  This, too, is a permissible reason to reject the letter. <u>See</u> <u>Batson v. Comm'r of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004) (the ALJ my disregard the conclusory findings of a treating physician).

In any event, the doctor's broad characterizations of certain of plaintiff's symptoms as "motor weakness," "muscle atrophy," "muscle weakness," and "fatigue," do not indicate that or how those "symptoms translate into specific functional deficits which preclude work activity."  <u>Morgan v. Comm'r of Social Sec. Admin</u>, 169 F.3d 595, 601 (9th Cir. 1999).   The ALJ weighed and, to the extent he found them supported by substantial evidence, included within the RFC all of the functional limitations plaintiff indicated she is suffering. (<u>See</u> TR 14).   This is sufficient.   <u>See</u> <u>Stubbs-Danielson v. Astrue</u>, 539 F.3d 1169, 1174 (9th Cir. 2008).

Furthermore, with respect to Dr. Peterson's statements to the effect that plaintiff has difficulty in her attention, concentration, memory, and cognition, the ALJ specifically rejected and declined to include any such limitations in the RFC.  (TR 14, 15.)  First, he found no evidence in the record that plaintiff has decreased attention, concentration, or cognition other than her subjective complaints.   (TR 15.)   This is a legally sufficient reason to reject such a limitation. <u>See</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986) (a plaintiff who alleges disability based on subjective symptoms must produce

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged). Second, the ALJ found that any allegation the plaintiff suffers from concentration or other cognitive difficulties is contradicted by the notes of the social security claims representative, who noted that she answered all questions without difficulty. (TR 96.) The ALJ may reject a limitation based upon evidence of behavior that is inconsistent with it. See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (holding that ALJ properly inferred that plaintiff was not as physically limited as claimed based on his ability to travel to Venezuela for an extended time to care for an ailing sister).  Third, plaintiff has refused to take medication for depression and anxiety, or to see a psychiatrist. (TR 14, 31.)  An ALJ may infer the plaintiff's symptoms are not as severe as alleged in light of fact that the plaintiff did not seek aggressive treatment for them. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

Accordingly, the court finds no material legal error here.

**C.   Crediblity**

Finally, plaintiff contends the ALJ improperly discounted her subjective complaints, which, in the absence of malingering, may be rejected only for clear and convincing reasons. See Smollen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). Specifically, she contends the ALJ did not adequately address her complaints of pain, weakness, fatigue, memory and concentration difficulties.

For the most part, as the court discussed above, the ALJ adopted plaintiff's self-professed limitations in the RFC assessment.  (See, e.g., TR 11, 27, 36, 39-40.) To the extent plaintiff alleged any greater

limitations than were encompassed in the RFC, the ALJ specifically addressed and rejected those limitations for legally sufficient reasons. The court discussed alleged limitations due to weakness, fatigue, and cognitive difficulties in the previous section. Because the ALJ offered legally sufficient reasons, based upon substantial record evidence, to decline to credit those limitations to any greater extent than provided for by the RFC, there is no material error here.

With respect to plaintiff's allegations of pain, the ALJ likewise declined to give any significant weight to plaintiff's claims of pain for the clear and convincing reason that plaintiff does not take intensive pain medication, and she has reported that her pain "comes and goes." (TR 14, 267.)   These are legally sufficient reasons to do so. See, e.g., Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)(citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (holding that the fact that plaintiff's physical ailments were treated with over the counter medication was a proper reason for discounting his allegations of disabling pain).

Accordingly, the ALJ's evaluation of plaintiff's subjective statements is likewise based on substantial evidence and free from material legal error.

CONCLUSION

Plaintiff clearly has severe impairments.[3]  A plaintiff who can still perform work in the national economy, even with a severe impairment, is not disabled as that term is defined by the Act.   See

---

[3]   Indeed, to the extent plaintiff's condition deteriorates, nothing in this order should be read to preclude her from applying for benefits in the future.

generally <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1395 (9th Cir. 1991). Furthermore, if the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Flaten v. Sec'y of Health and Human Servs.</u>, 44 F.3d at 1457.

After careful consideration of the record as a whole, the magistrate judge concludes that the Commissioner's decision is supported by substantial evidence and is free from material legal error. Accordingly, it is ordered that judgment be entered in favor of the Commissioner.

DATED: 9/2/09

_____
CAROLYN TURCHIN
UNITED STATES MAGISTRATE JUDGE

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Betty Lou Canedy | |
| (Claimant) | |
| | ▇▇▇▇▇▇▇▇ |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On January 18, 2007, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning August 9, 2006. The claim was denied initially on March 5, 2007, and upon reconsideration on May 15, 2007. Thereafter, the claimant filed a timely written request for hearing on June 19, 2007 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on August 19, 2008, in San Bernardino, CA. Gregory S. Jones, an impartial vocational expert, also appeared at the hearing. The claimant is represented by William M. Kuntz, an attorney.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2010. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from August 9, 2006 through the date of this decision.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

See Next Page



8

claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and



404.1565). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.**

**2.   The claimant has not engaged in substantial gainful activity since August 9, 2006, the alleged onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

This finding is based on the claimant's testimony and her earnings record (Exhibit 1D).

**3.   The claimant has the following severe impairments: post-polio syndrome, restless leg syndrome, and mild degenerative changes at the L5-S1 level, producing mild radiculopathy (20 CFR 404.1520(c)).**

The claimant's impairments affect her more than minimally; thus they are considered to be severe.

The claimant's medically determinable mental impairment of memory problems does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere. In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The first functional area is activities of daily living. In this area, the claimant has no limitation. The next functional area is social functioning. In this area, the claimant has no limitation. The third functional area is concentration, persistence or pace. In this area, the claimant has no

See Next Page



10

Betty Lou Canedy ()                                     Page 4 of 9

limitation. The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" limitation in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1)).

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

**4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

The claimant's impairments do not meet or equal any of the 1.00 (musculoskeletal system), 11.00 (neurological system), or 14.00 (immune system) series of impairments.

**5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a limited range of sedentary exertion.  The claimant can lift and carry 10 pounds occasionally and less than 10 pounds frequently.  She can stand for up to 2 hours out of an 8-hour work day, and she can sit for 6 hours out of an 8-hour work day.  The claimant can sit for up to 1 hour; she then must be allowed to be on her feet for up to 10 minutes before sitting again.  She must avoid concentrated exposure to cold.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent

See Next Page



11

Betty Lou Canedy                                     Page 5 of 9

to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant testified she has not worked since the alleged onset date. She stopped working because she had a dispute with her boss and because of stress. She could not have continued working even if she were able to sit for 8 hours per day. She was getting fatigued, and she had back and leg problems. The claimant has been diagnosed with post polio syndrome, and she has also had restless leg syndrome for two years. She cannot sit for 8 hours per day as she has pain in both her legs. Two years ago, the claimant could sit for 2 hours. She would then get up for 10 minutes and then sit for another hour. She has problems with her memory, and the fatigue is progressively worsening. She falls asleep in her chair every night. She cannot remember words sometimes to express her thoughts. She cannot put together a sentence. She testified there is no way she could perform her past relevant work. Her doctor has recommended an antidepressant, but the claimant does not want to take the medication. She stated she takes Topomax, which affects her word loss, but there is no other medication which can help her nerve damage. She takes four Ultracet a day for pain, one Celebrex, Requip for restless leg syndrome, and Protonic for her stomach. She believed she would last for less than half a day at work as she cannot tolerate the cold, or air conditioners.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

The claimant is a 51-year-old woman with a history of polio, with residual left lower extremity weakness. She also has a history of restless leg syndrome.

Treatment records from the office of Dr. Gerry Cabalo date from November 12, 1991 to June 15, 2006 (Exhibits 1F, 7F, 8F). Most of the records are dated prior to the alleged onset date and indicate only that the claimant was seen for transient complaints. The only record of evidentiary value is a June 9, 2005 bone density report, which indicated the claimant had significant osteopenia at both femoral necks, but the bone density value in the lumbar spine was only borderline osteopenic (Exhibit 7F, p. 3).

On September 15, 2006, she consulted Dr. Lama Al-Khoury, a neurologist, for complaints of worsening left lower extremity weakness and inability to walk (Exhibit 2F, p. 9). She reported a history of polio at the age of 2, and standing was the worst position she could do to exacerbate her low back pain; however, she denied left leg pain. On examination, motor strength was slightly less than normal in the left upper extremity, with bilateral triceps and biceps weakness of 5- and left finger extension weakness of 4+. The claimant limped on the left, and her left leg was shorter than the right, with swelling and atrophy. The claimant had left foot drop and weakness in the left lower extremity as well as decreased sensation. Dorsiflexion, inversion, and eversion on the left side were 2+ (Exhibit 2F, p. 11). October 9, 2006 magnetic resonance imaging



(MRI) of the lumbar spine showed normal L4-5 and proximal disc spaces, disc bulging at L5-S1 with degenerative changes and secondary mild contouring of the dural sac, but no neural compromise, and mild facet arthropathy at L4-5 and L5-S1. A nerve conduction study showed mild right L5 and S1 radiculopathy with chronic denervation, and severe radiculopathy at the left L3, L4, and L5/S1 with chronic denervation (Exhibit 2F, pp. 7-8; Exhibit 5F, p. 14). On December 19, 2006, the claimant had minimal weakness of 5- in the bilateral triceps and 4+ to 5- in left finger extension, and decreased sensation in the left lower extremity. The claimant limped, but she walked without support. Dr. Khoury thought that post-polio syndrome might be the cause of the worsening left lower extremity weakness although the electrodiagnostic studies did not support that finding (Exhibit 2F, p. 2-3).

Treatment records from Dr. Robert Peterson of Murrieta Family Medicine date from September 18, 2006 to July 24, 2008 (Exhibits 5F, 9F). On November 2, 2006, Dr. Peterson prescribed physical therapy for the claimant (Exhibit 5F, p. 13). January 5, 2007 imaging of the lumbar spine showed mild degenerative changes along the sacroiliac joints and at the L5-S1 level (Exhibit 5F, p. 10). X-rays of the pelvis were normal (Exhibit 5F, p. 9). January 7, 2007 imaging of the left foot showed slight deformity of the navicular bone (Exhibit 5F, p. 11). On March 5, 2007, the claimant said she could not walk or climb stairs. She requested a wheelchair from Dr. Peterson, but his records do not show that he ever prescribed one (Exhibit 5F, p. 6). March 23, 2007 pulmonary function testing was normal (Exhibit 5F, p. 19). An April 13, 2007 chest x-ray was normal (Exhibit 5F, p. 4). On June 7, 2007, the claimant said she did not think she could work because it took her 2 hours to get ready. She said she could sit for 30 minutes before getting up, and she could stand for 5 minutes. She then said she had to lie or sit down, and her feet would go numb. She could walk for more than 100 feet without a cane; push a shopping cart with 50 pounds of weight occasionally and 25 pounds frequently; lift 20 pounds occasionally and 10 pounds frequently; she could not stoop. She also said she had numbness in her hands, but she could grasp and grip. She could frequently reach overhead with the right arm, but because of pain in the left shoulder, she could almost never reach overhead. She also complained of shortness of breath and fatigue, and she said that the prescribed Topamax caused memory problems (Exhibit 9F, p. 3). On October 18, 2007, the claimant said she was having stress because of family health problems. She said she was afraid to take an anti-depressant (Exhibit 9F, p. 6). On January 22, 2008, the claimant said her anxiety was better controlled, and she was not taking the prescribed Xanax (Exhibit 9F, p. 5). In a Musculoskeletal Disorder Questionnaire dated February 19, 2008 (the form was completed by Dr. Peterson's medical assistant, but he signed it), the claimant carried diagnoses of post polio syndrome, restless leg syndrome, radiculopathy, anxiety, memory problems, fatigue, and atrophy. The claimant did not have a history of paralysis or loss of functioning, or long term narcotic management. She had complained of anxiety once but later said it was better controlled (Exhibit 8F, pp. 16-17). On June 9, 2008, the claimant said she had severe pain on a flight to Florida (Exhibit 9F, p. 8). On June 24, 2008, the claimant reported grieving over the recent deaths of her father-in-law and sister-in-law. She complained of right hand pain. Regarding the post-polio syndrome, the claimant mentioned that the pain "comes and goes" (Exhibit 9F, p. 9). July 24, 2008 x-rays of the right hand showed mild degenerative changes (Exhibit 9F, p. 10).

Apart from objective findings, there are substantial reasons pursuant to Social Security Ruling 96-7p to conclude that the claimant remains able to engage in a wide range of work-related



Betty Lou Canedy ▮▮▮▮▮▮▮                                    Page 7 of 9

activities. The claimant has a history of post-polio syndrome, which left her with residual left lower extremity weakness and a limp because her leg is shorter on the left. Over the years, it appears her symptoms have worsened; however, the claimant is still capable of performing the residual functional capacity found herein. The claimant voluntarily quit her last job due to a dispute with her employer and not because of her condition. The claimant is not on intensive pain medication, and she has reported the pain "comes and goes" (Exhibit 9F, p. 9); therefore, it can be inferred the claimant's pain is not chronic. During an average day, the claimant reported she does laundering, cleans, watches television, sits, gets up and moves around, and then sits (Exhibit 4E, p. 1). Her description of her daily activities is not inconsistent with the residual functional capacity found herein. She further reported she does no lifting, but she also said she carries her purse and does laundry (Exhibit 4E, pp. 1-3). She drives an automatic car (Exhibit 4E, p. 2). The claimant told Dr. Peterson she can could sit for 30 minutes before getting up, stand for 5 minutes, sit or lie down, walk for more than 100 feet without a cane, push a shopping cart with 50 pounds of weight occasionally and 25 pounds frequently, lift 20 pounds occasionally and 10 pounds frequently, no stooping, grasp and grip, frequently reach overhead with the right arm, and rarely reach overhead with the left arm (Exhibit 9F, p. 3). Most of the claimant's self assessment is not inconsistent with the residual functional capacity found herein. Dr. Al Khoury's examinations showed only minimal weakness in the upper extremities; there is no evidence the claimant has significant limitations in either upper extremity. Although the claimant has a back impairment and radiculopathy, there is nothing to support a finding that she cannot stoop. She has complained of memory problems and cognitive dysfunction, but the claims representative who assisted the claimant noted the claimant answered all questions without difficulty (Exhibit 1E, p. 3). She has also complained of depression and anxiety, but most of her complaints were because of illness and death of family members. The claimant is not taking any psychiatric medication; in fact, she refused to take the prescribed Xanax; and she is not seeing a psychiatrist. There is no evidence the claimant has had a severe mental impairment which has lasted or was expected to last for 12 months' duration.

As for the opinion evidence, the State Agency review physicians determined that the claimant could perform a limited range of sedentary exertion (Exhibits 3F, 4F, 6F). The residual functional capacity found herein is generally compatible with the State Agency findings. The undersigned has also considered the claimant's subjective complaints regarding working in a cold environment and a sit/stand option, and has included limitations based on the claimant's allegations.

There are "Physician's Supplemental Certificate" forms signed by Dr. Peterson, and which indicate the claimant could not work due to low back pain and pelvic tilt. These forms were completed so that the claimant could qualify for State disability (Exhibit 5F, pp. 7, 8, 12). By letter dated January 31, 2008, Dr. Peterson indicated the claimant was permanently disabled because of her symptoms and signs, including motor weakness, muscle atrophy, joint pain, skeletal deformities, and decreased attention, cognition, and concentration (Exhibit 9F, p. 7). The forms for State disability purposes are not entitled to great weight as Social Security Regulations provide that a decision for any non-governmental agency or any other governmental agency that an individual is "disabled" is based on the rules of that agency. The Social Security Administration, however, makes a determination of disability on Social Security law. Hence, a decision for any other agency, either non-governmental or governmental including State



Betty Lou Canedy                                    Page 8 of 9

disability, that a claimant is disabled or unable to work is not binding on the Administration. Likewise, Dr. Peterson's opinion in the letter dated January 31, 2008 is not given significant weight. As noted above, the claimant is still capable of performing a limited range of sedentary exertion, and her own self assessment supports this findings. There is no evidence the claimant has decreased attention, concentration, or cognition other than the claimant's subjective complaints. Therefore, Dr. Peterson's opinion is not persuasive or supported.

There is also a letter dated December 8, 2005, signed by Dr. Cabalo, in which he requested that the claimant be permanently excused from jury service due to medical reasons (Exhibit 1F, p. 4). This letter is not entitled to significant weight for the same reasons cited for the Physician Supplemental Certificates. Moreover, this letter was completed prior to the alleged onset date and when the claimant was still working on a full-time basis. Dr. Cabalo never mentioned what medical condition the claimant had which precluded jury service, and he never indicated what the claimant could still do despite her impairment.

**6.    The claimant is capable of performing past relevant work as an office manager as it is generally performed in the national economy. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**

The vocational expert submitted a Work Summary report (Exhibit 10E) which shows that the claimant's past relevant work as an office manager is generally performed as skilled work at the sedentary exertional level (DOT 169.167-034); however, the claimant performed it as light exertion. Based on the residual functional capacity found herein, the vocational expert testified that the claimant can perform her past relevant work as it is generally performed.

The undersigned agrees with the vocational expert. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed (Social Security Rulings 96-7p, 00-4p).

**7.    The claimant has not been under a disability, as defined in the Social Security Act, from August 9, 2006 through the date of this decision (20 CFR 404.1520(f)).**

See Next Page



15

Betty Lou Canedy (████████)                                    Page 9 of 9

## DECISION

Based on the application for a period of disability and disability insurance benefits filed on January 18, 2007, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

/s/ *Jesse J. Pease*
_____
Jesse J. Pease
Administrative Law Judge

October 3, 2008
_____
Date

KF

**EXHIBIT**  16